

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8159 | DATE | 11/12/2002 |
| CASE TITLE | Gregory Grana vs. IL Dept of Transportation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [12-1] is granted. Defendant's motion to strike and to deem admitted portions of plaintiff's response to defendant's Local Rule 56.1(a) statement of facts, portions of plaintiff's statement of additional facts and portions of the affidavit of Gregory Grana [18-1] is granted in part and denied in part. Judgment is entered in favor of the defendant IL Dept. of Transportation and against the plaintiff Gregory Grana. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | NOV 13 2002 | | 24 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| RO | courtroom deputy's initials | 02 NOV 12 PM 3:52 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GRANA,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF<br>TRANSPORTATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   No. 01 C 8159<br>)<br>)   Judge Ruben Castillo<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Grana ("Grana") sued the Illinois Department of Transportation ("IDOT") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-3(a), claiming that he was retaliated against for opposing alleged discrimination against a female co-worker. Presently before the Court is IDOT's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons we grant IDOT's motion for summary judgment. (R. 12-1.)

## RELEVANT FACTS[1]

Grana was first employed by IDOT in 1990 as a temporary worker. (R. 12, Def.'s Facts ¶ 2.) In 1992, Grana was hired permanently as a highway maintainer, and in 1994 he was promoted to heavy construction equipment manager of the Arlington Heights Yard ("Yard").

---

[1] The following undisputed facts are taken from the parties' respective Local General Rule 56.1 statements of material facts and accompanying exhibits. IDOT has filed a motion to strike various portions of Grana's response to its statement of material facts and of Grana's affidavit. This Court has carefully considered IDOT's objections to Grana's responses and, except as otherwise noted herein, we have not relied on those responses in this opinion. Accordingly, except as otherwise noted IDOT's motion to strike is denied as moot. (R. 18-1.)

1



(*Id.*) Grana's co-workers include Technician Matt Mara ("Mara"), who holds the highest position at the Yard, and Michael Poladian ("Poladian"), the Lead Lead Worker, who has assisted Mara since 1996. (R. 12, Def.'s Facts ¶¶ 3, 4.) In conjunction with Mara, Poladian gives assignments to the crew and passes out assignments to Lead Workers. (*Id.*, Ex. D at ¶ 13.) The Lead Workers are responsible for managing their crews, carrying out assigned tasks, and assigning particular tasks to individual workers, including Grana. (*Id.*)

On October 26, 2000, Grana wrote a memo complaining about alleged unfair labor practices at the Yard. (R. 12, Def.'s Facts ¶ 5.) Specifically, Grana believed that he was being treated unfairly because another worker received more overtime than he did and was transferred to a more favorable position. (*Id.* at ¶ 6.) In the memo, Grana also alleged that Poladian was under investigation for discriminatory practices against Donna Rhodes, a female co-worker who filed a charge of discrimination with the EEOC, and Grana indicated that he would "gladly testify" on Rhodes's behalf. (*Id.* at ¶¶ 7-8.)[2] His memo also mentioned a sexual comment Mara made about Sandi Brown, an IDOT Civil Rights Investigator. (*Id.* at ¶ 7.) In his memo Grana stated that he could no longer tolerate his supervisors' continual abuse of their power and authority. (R. 15, Pl.'s Facts, Grana Aff. ¶ 2.) Grana claims that the statements in the memo are "not retaliation but factual and I would gladly testify as such." (R. 12, Def.'s Facts ¶ 8.) Grana alleges that the statements in his memo informed IDOT that he was acting as a witness for Rhodes. (*Id.*) Grana has not been called to testify on behalf of Rhodes, but he did make a

---

[2] This Court has also been assigned Ms. Rhodes's lawsuit through our district's random assignment system. This case is currently pending. *Rhodes v. Illinois Dep't of Transp.*, No. 01 C 9040 (N.D. Ill.).

2

statement to the Chief Counsel for the State of Illinois on February 21, 2002. (R. 15, Pl.'s Facts, Grana Aff. ¶ 3.)

Grana's memo complaining of unfair labor practices was referred to Giovanni Fulgenzi, IDOT's Personnel Services Manager. (R. 12, Def.'s Facts ¶ 12.) On November 30, 2000, Fulgenzi met with Grana and Michael Malone, the union steward, for over an hour. (*Id.* at ¶ 13.) Grana and Fulgenzi discussed all the topics in Grana's memo. (*Id.* at ¶ 15.) Grana declared that "other employees" were denied opportunities in the Yard because of IDOT's "unfair labor practices." (*Id.* at ¶ 16.) Grana then informed Fulgenzi that he had witnesses that could vouch for his grievances. (R. 15, Pl.'s Facts, Grana Aff. ¶ 4.) Fulgenzi did not inquire about the names of the witnesses, and told Grana that in his experience it would be difficult to get anyone to come forward. (*Id.*) Grana also provided Fulgenzi with a typed memo from Tom Kidon, one of his co-workers, which stated that Kidon had heard Mara make a statement about Sandi Brown. (R. 15, Pl.'s Facts ¶ 17.) Grana and Fulgenzi spent less than ten minutes discussing the alleged sexual harassment of women in the Yard. (R. 12, Def.'s Facts ¶ 14.) Fulgenzi never asked for the names of Grana's witnesses, nor did he tell Grana that he was investigating Grana's complaints. (*Id.* at ¶ 6.) Fulgenzi nevertheless investigated Grana's claims. (R. 12, Def.'s Facts ¶ 19.)[3]

Grana contends that soon after his memo was circulated his supervisors began retaliating against him. (*Id.* at ¶ 23.) Grana claims that because of his participation in a sexual harassment

---

[3] IDOT's motion to strike Grana's response to this fact, which stated that Grana had no knowledge of whether Fulgenzi investigated his claims, is granted. Pursuant to Local Rule 56.1(b)(3)(B), "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by . . . the opposing party." Lack of knowledge is insufficient to meet this threshold requirement, and thus Defendant's fact is deemed admitted. *See Gilmore v. Festo KG*, No. 97 C 5106, 1999 WL 356795, *2 (N.D. Ill. May 24, 1999).

3

investigation against his supervisors he was given undesirable job assignments, which included sweeping out the truck bay at the yard and picking up trash along the roadway. (R. 15, Pl.'s Facts, Grana Aff. ¶ 10.) These assignments were given out and expected to be performed during contract-approved lunch breaks on days when investigators came to the Yard to interview Grana. (*Id.* at ¶ 11.) Picking up trash is not a normal job assignment in the Yard, and no other employees were assigned this task. (*Id.*) According to IDOT, Yard workers who have to talk to legal counsel typically are given tasks like equipment or yard maintenance in the Yard because workers are instructed to remain in the Yard during interviews or meetings with legal counsel or investigators. (R. 17, Def.'s Reply, Ex. D, Poladian Aff. ¶¶ 29-30.) Grana admits that such duties may be included in his job description as "other duties." (R. 12, Def.'s Facts ¶ 26.) Additionally, in November 2000 Grana believed that another employee was treated more favorably when he was permitted to do time-keeping work, while Grana was assigned to load trucks. (*Id.* at ¶ 32.)

Grana also complains that shortly after his October 26, 2000, memo Mara warned him that he would need a "good lawyer." (R. 12, Def.'s Facts ¶ 27.) According to one of Grana's co-workers, Poladian commented that he would "own [Grana's] home." (*Id.* at ¶ 29.) Grana did not hear this comment himself. (*Id.* at ¶ 30.) Grana also felt that Poladian would slam the door in his face and do things that made him uneasy at work. (*Id.*) Grana felt that Mara and Poladian ceased "casual talk" with him after his involvement in a sexual harassment claim against them. (*Id.* at ¶ 31.)

On February 21, 2001, IDOT notified Grana that a pre-disciplinary meeting against him was scheduled. (R. 12, Def.'s Facts, Ex. K, IDOT Letter.) Grana felt that this pre-disciplinary

4

meeting was retaliatory even though he had not yet received the charges against him. (*Id.* at ¶ 36). Grana was charged with violating the following sections of the Illinois Department of Transportation Personnel Policy:

> Section F-1: "Employees should not engage in, instigate or cause any interruption or impede the work effort of other employees."
>
> Section R: "Employees shall conduct themselves and their business to the highest ethical standards that reflect professional management and/or engineering practices."
>
> Section J: "All employees have a duty to participate in, and shall cooperate with, all official investigations."

(*Id.* at ¶ 38.)

No determination was made at the pre-disciplinary meeting. (*Id.* at ¶ 39.) Grana filed a retaliation claim with the EEOC against IDOT prior to being informed of the determination of the pre-disciplinary meeting. (*Id.*) Grana wrote a memo responding to the charges against him, and filed a retaliation claim against IDOT with the EEOC that same day. (*Id.* at ¶ 40.)

Grana claims to have been disciplined in the form of a written warning dated April 2, 2001. (*Id.* at ¶ 41.) The parties dispute whether this letter was sent to Grana or became part of his personnel file. The parties are also in disagreement over how Grana obtained a copy of this letter. Grana claims that the letter was sent to him at his residence on or before April 4, 2001. (R. 15, Pl.'s Facts, Grana Aff. ¶ 14.) Grana claims he may have inadvertently sent his copy of the letter to the EEOC. (*Id.*) Grana has not yet produced the original letter, and IDOT claims that it never sent the letter. (R. 12, Def's Facts ¶¶ 43, 46.) Immediately after IDOT decided to issue Grana a written warning, Fulgenzi learned that Grana had filed a charge of retaliation with the EEOC and thus he decided not to issue the warning so as not to raise any question of

5

retaliatory behavior. (*Id.* at ¶¶ 44-45.) IDOT maintains that the warning letter was accidentally placed in Grana's personnel file, (*id.* at ¶ 46), and never became a part of Grana's permanent record, (*id.* at ¶ 48).[4]

On April 26 and May 10, 2001, Grana wrote memos complaining of activities he believed constituted continued harassment. (*Id.* at ¶ 52.) Grana complained of jokes made by Poladian and of not being given a fifteen-minute break to wash up. (*Id.*) Grana admitted in his deposition that he was not fired, his pay has not been reduced, his benefits have not been reduced, he has not been transferred to another Yard, he has not suffered a demotion, he has not been placed on probation or suspended, and he has not been disciplined. (*Id.* at ¶¶ 53-59.)[5]

## LEGAL STANDARDS

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality is determined by assessing whether the fact in dispute, if proven, would satisfy a legal element under the theory alleged or otherwise affect the outcome of the case. *Id.* at 247. The Court must view all the evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Imp., Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987), and draw all inferences in the nonmovant's favor, *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990). If the

---

[4] IDOT's motion to strike Grana's response to fact paragraph 48 is granted. *See* note 2, *supra*.

[5] In his statement of facts and accompanying affidavit, Grana attempts to qualify his sworn deposition testimony on these issues with additional information that amounts to impermissible legal conclusions and speculation. Accordingly we grant IDOT's motion to strike Grana's responses to paragraphs 53 to 58 of IDOT's statement of facts.

evidence is merely colorable, however, or is not significantly probative or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249-50; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Flip Side Prods., Inc. v. Jam Prods., Ltd.*, 843 F.2d 1024, 1032 (7th Cir. 1988). Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 255. In an employment discrimination suit, where credibility and intent are crucial issues, these standards are applied with added rigor. *Courtney v. Biosound*, 42 F.3d 414, 418 (7th Cir. 1994).

## ANALYSIS

Under Title VII, an employer is prohibited from discriminating against an employee because that employee has opposed any practice deemed unlawful under the Act. 42 U.S.C. § 2000e-3(a). Grana first claims that there is some direct evidence of retaliation, including Mara's comment that Grana better have a "good lawyer" and Poladian's statement that he was going to own Grana's home. Because these occurred within days of Grana's October 26, 2000 memo, Grana believes that he has provided direct evidence of retaliation. We disagree. Direct evidence is that which "establishes without resort to inferences from circumstantial evidence" a plaintiff's claim that he engaged in protected activity and, as a result, suffered the adverse employment action of which he complains. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Noble v. Sheahan*, 132 F. Supp. 2d 626, 633 (N.D. Ill. 2001) (*quoting Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 443 (7th Cir. 1997)). Moreover, mere temporal proximity between the protected activity and the alleged retaliatory actions rarely will be sufficient in and

of itself to create a triable issue. *Stone*, 281 F.3d at 644. Grana's argument fails because Mara's and Poladian's comments, standing alone, do not establish direct evidence of retaliation. One would have to infer that the comments constituted an adverse employment action, an argument that we reject later in this opinion, and that the comments were intended to retaliate against Grana for his support of Rhodes's discrimination complaint and not, as IDOT contends, in response to what Mara and Poladian believed to be false and misleading statements in the memo. (R. 12, Def.'s Facts, Ex. G, Mara memo.) Having failed to establish direct evidence of retaliation, Grana must proceed with the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the indirect method, a prima facie case of retaliation is established when a plaintiff demonstrates that: (1) he engaged in a protected activity under Title VII; (2) he suffered an adverse employment action by his employer subsequent to his participation in a protected activity; and (3) there is a causal connection between the adverse employment action and the protected activity. *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 708 (7th Cir. 1995). If the plaintiff makes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802-03. If the defendant is successful, the burden shifts back to the plaintiff to prove that the defendant's proffered reasons are a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

At issue in this case is the second element: whether Grana suffered an adverse employment action. Grana satisfies the first prong of a prima facie case of retaliation because protected activity is defined as opposition to any practice rendered unlawful by Title VII,

including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). Grana's participation as a witness for a co-worker's claim of discrimination under Title VII constitutes protected activity as defined by Title VII. *Id.* The third prong, whether there is a causal connection between the adverse employment action and the protected activity is also not at issue because, as noted below, Grana ultimately fails to prove that he has suffered an adverse employment action.

Title VII's retaliation provision does not explicitly state what conduct constitutes adverse employment action. *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998). Case law suggests that the following conduct does amount to retaliation: a termination of employment, a demotion or decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, and a transfer to a new department with a loss of non-quantifiable benefits such as one's own office, business cards, and listing in professional directories. *See Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993); *Collins v. State of Ill.*, 830 F.2d 692, 703 (7th Cir. 1987). Thus, adverse employment action is not limited solely to loss or reduction of pay. *Collins*, 830 F.2d at 703. Accordingly, although Grana was not terminated, placed on probation, suspended, demoted, and did not suffer a decrease in salary, IDOT's actions may still constitute adverse employment actions.

Grana believes that he suffered adverse employment actions because: (1) on two occasions he had to sweep out the truck bay, (R. 12, Def.'s Facts ¶¶ 24, 25); (2) he once had to pick up garbage along side the road, (*id.*); (3) a co-worker was assigned to do timekeeping tasks while Grana was assigned to load trucks, (*id.* at ¶¶ 33, 34); (4) his supervisors did not make casual talk with him, (*id.* at ¶¶ 27-31); (5) he was not given fifteen minutes to wash up on

occasion, (*id.* at ¶ 52); and (6) he received a written warning letter pursuant to a pre-disciplinary meeting held on February 28, 2001, (*id.*, Ex. K, IDOT letter).[6]

Turning to Grana's first two complaints, it is well established that differences in treatment that have "little or no effect on an employee's job" and changes in the conditions or terms of employment that are nothing more than "mere inconveniences or alteration of job responsibilities" do not amount to adverse employment action. *Togba v. County of Cook*, 48 F. Supp. 2d 1104, 1110 (N.D. Ill. 1999) (*quoting Sweeney*, 149 F.3d at 556). "Temporarily assigning a minor amount of extra work is not an adverse employment action because it is only a 'mere inconvenience,'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001), and does not rise to the level of being fired, demoted, or suspended, *see Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998); *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). Similarly, a temporary assignment to an undesirable position does not constitute adverse employment action. *See Halloway v. Milwaukee County*, 180 F.3d 820, 826 (7th Cir. 1999) (finding no adverse employment action where plaintiff temporarily had inadequate offices, support staff, and materials); *see also Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). Grana was only assigned to do these "undesirable" duties on three occasions, for a temporary period of time. Grana has neglected to show how these three isolated incidents changed the conditions of his

---

[6] Grana also complained of: (1) not receiving leadership or computer training; (2) being required to lift over 25 pounds while he was on limited duty; (3) not being given the opportunity to act as temporary Lead Worker as often as other co-workers; (4) other workers receiving more favorable assignments and more overtime; and (5) not being assigned time-keeping tasks. IDOT correctly points out, however, that these incidents all took place prior to Grana's October 26, 2000, memo and therefore cannot constitute retaliation for his memo. As such, we will only address the alleged retaliatory actions that took place *after* October 26, 2000.

10

employment beyond an occasional inconvenience. Grana even admits that these duties may fall within his job description under "other duties." (R. 12, Def.'s Facts ¶ 26.)

Adverse employment action must have some "tangible job consequence." *Sweeney*, 149 F.3d at 556. A tangible job consequence includes firing, demotion, and suspension. *See Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000). Grana was not fired, demoted, suspended, and did not suffer a decrease in pay. (R. 12, Def.'s Facts ¶¶ 53-58.) Thus, Grana has failed to prove how occasionally sweeping out the truck bay and picking up trash along roadway had a "tangible consequence" on his job. The only consequence Grana claims to have suffered is disliking and resenting the duties he was assigned to do, which is insufficient to amount to a "tangible job consequence."

Grana next claims that his assignment to load trucks while a co-worker performed time-keeping tasks was retaliatory. (*Id.* at ¶ 33.) But Grana was not trained as a time keeper, and his co-worker was. Moreover, Grana's job at the Yard includes loading trucks. Without more, Grana's claim that this job duty constitutes adverse employment action fails. Next, Grana argues that his supervisors' failure to make "casual talk" with him, coupled with several other comments constitutes adverse employment action. (*Id.* at ¶¶ 29-30.) Specifically, Grana claims that Poladian's comments that he would "own [Grana's] home," and Poladian's slamming the door in Grana's face are evidence of adverse employment actions. (*Id.*) Grana states that Mara's comment that he hoped Grana had a "good lawyer," is also evidence of retaliation. As noted above, these statements are insufficient to constitute direct evidence of retaliation. But courts have found that "[u]nder the proper circumstances, an employer who orders other employees not to talk to a Title VII claimant could indeed retaliate against that claimant by, in

employment beyond an occasional inconvenience. Grana even admits that these duties may fall within his job description under "other duties." (R. 12, Def.'s Facts ¶ 26.)

Adverse employment action must have some "tangible job consequence." *Sweeney*, 149 F.3d at 556. A tangible job consequence includes firing, demotion, and suspension. *See Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000). Grana was not fired, demoted, suspended, and did not suffer a decrease in pay. (R. 12, Def.'s Facts ¶¶ 53-58.) Thus, Grana has failed to prove how occasionally sweeping out the truck bay and picking up trash along roadway had a "tangible consequence" on his job. The only consequence Grana claims to have suffered is disliking and resenting the duties he was assigned to do, which is insufficient to amount to a "tangible job consequence."

Grana next claims that his assignment to load trucks while a co-worker performed time-keeping tasks was retaliatory. (*Id.* at ¶ 33.) But Grana was not trained as a time keeper, and his co-worker was. Moreover, Grana's job at the Yard includes loading trucks. Without more, Grana's claim that this job duty constitutes adverse employment action fails. Next, Grana argues that his supervisors' failure to make "casual talk" with him, coupled with several other comments constitutes adverse employment action. (*Id.* at ¶¶ 29-30.) Specifically, Grana claims that Poladian's comments that he would "own [Grana's] home," and Poladian's slamming the door in Grana's face are evidence of adverse employment actions. (*Id.*) Grana states that Mara's comment that he hoped Grana had a "good lawyer," is also evidence of retaliation. As noted above, these statements are insufficient to constitute direct evidence of retaliation. But courts have found that "[u]nder the proper circumstances, an employer who orders other employees not to talk to a Title VII claimant could indeed retaliate against that claimant by, in

effect, ordering others to shun her." *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir. 1996). In this case, however, neither Poladian nor Mara ordered other employees to avoid Grana. Furthermore, the Seventh Circuit has held that neither a "bruised ego," *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994), nor public humiliation constitutes an adverse employment action, *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). The Seventh Circuit has made clear that "everything that makes an employee unhappy is not actionable" as an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (*quoting Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)). Although Grana may have felt uneasy and hurt, Poladian and Mara's actions fall short of adverse employment action. Grana may not enjoy his current situation, but a less-than-desirable rapport with his supervisors does not constitute an adverse employment action.

Grana next complains that he was periodically denied a contractually guaranteed wash-up period during his shift. (R. 12, Def.'s Facts ¶ 52.) But Grana's union contract does not include such a provision. (R. 17, Def.'s Reply Mem., Ex. E, Union Contract; Ex. C, Mara Aff. ¶ 9; Ex. D, Poladian Aff. ¶ 5.) IDOT rules, however, do provide for one fifteen-minute break during the first half of an employee's shift, and another during the second half of the shift. (*Id.*, Ex. F, IDOT Work Rules at 1.) IDOT's rules also provide that an employee may not return to headquarters prior to fifteen minutes before the end of a shift, but there is no rule guaranteeing a fifteen-minute wash-up break before the end of the shift. (*Id.* at 2.) Grana has failed to show how IDOT's compliance with its own rules regarding employee breaks is retaliatory. As such, denial of a fifteen-minute wash-up period does not constitute an adverse employment action.

Lastly, Grana contends that the warning letter that he claims to have received was an adverse employment action. As noted above, the parties dispute whether Grana received a copy of the letter and whether it was a part of his file. Regardless, this letter cannot be considered an adverse employment action unless the letter is accompanied by some other action, such as job loss or demotion. *Sweeney*, 149 F.3d at 550("[t]his circuit has concluded that negative performance evaluations, standing alone, cannot constitute an adverse employment action"); *Krause v. City of LaCrosse*, 246 F.3d 995, 1000 (7th Cir. 2001); *Ribando v. United Airlines, Inc.*, 200 F.3d 507 (7th Cir. 1999); *Oest*, 240 F.3d at 613. IDOT's warning letter was not accompanied by a demotion or significant change in Grana's employment. Grana does not offer any evidence suggesting that his employment status changed pursuant to or in conjunction with the warning letter. Even if the letter was issued, IDOT has since withdrawn it. Furthermore, the letter was merely a warning; IDOT did not discipline Grana. Thus the letter does not constitute an adverse employment action.

## CONCLUSION

Grana has failed to satisfy the second prong of his prima facie case because he has failed to show that he suffered an adverse employment action. Consequently, Grana also is unable to show a causal connection between the adverse employment action and his participation in the sexual harassment claim. Because Grana has not established his prima facie case, we need not shift the burdens to reach the questions of whether IDOT could establish a legitimate, non-discriminatory reason for its actions or whether IDOT's proffered reasons are pretext for unlawful discrimination. Accordingly, we grant IDOT's motion for summary judgment. (R. 12-1.) Furthermore, as stated in this opinion, we also grant in part and deny in part IDOT's motion to strike and deem admitted portions of Plaintiff's response to Defendant's Local Rule 56.1(a)

13

statement of facts, portions of Plaintiff's statement of additional facts, and portions of the affidavit of Gregory Grana. (R. 18-1.)

While Grana's decision to aid his fellow workers certainly was commendable, he simply has not shown the necessary facts that would support a reasonable jury verdict in his favor. Therefore, this Court must direct the Clerk of the Court to enter judgment in favor of the Illinois Department of Transportation.

ENTERED: *[signature]*

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 12, 2002**